Good morning. May it please the court. My name is Katherine Corrigan. My partner, Yara Cascarigi, and I are supervised law students from Boston College Law School, appearing under the supervision of Kari Long, who is seated at counsel table. We represent Petitioner Julio Villavicencio. With leave of the court, I respectfully wish to reserve two minutes of my time for my partner to provide a rebuttal. There are four reasons to reverse the BIA. First, on the deportability ground, at step one, the BIA found that Nevada's conspiracy to possess statute is overbroad. Mr. Villavicencio agrees with this finding. There are two alternative reasons on which this court can affirm. One reason is that Garcia-Santana resolves overbroad. Nevada's conspiracy statute, that was the identical statute here and in Garcia-Santana, lacks the overt act element. In Garcia-Santana, Nevada's statute then was overbroad to the generic conspiracy offense. Even though Mr. Villavicencio was charged with the deportability ground instead of the aggravated felony, the analysis is identical. A secondary alternative basis to find overbroad is that Nevada regulates more than the federal schedules. Nevada's and thousands of other common medications through reference to the Food, Drug, and Cosmetic Act. In an analogy's case, in Baromi, the 3rd Circuit was tasked with asking whether the FTCA was overbroad to the Federal Controlled Substances Act. The 3rd Circuit there said yes because it reaches common medications. There is no reason to depart from this result. On the second point, at step 2, the BIA wrongly assumed that Nevada's conspiracy to possess statute is divisible. The jury instructions for Nevada's conspiracy statute identifies only two elements, which are 1. in agreement and 2. to commit a crime, which in this case is possessing drugs which may not be introduced into interstate commerce. Nevada's jury instructions do not direct the jury to find a specific drug, and they explain to jurors that they may not be, quote, unanimous on the principle of criminal liability, end quote. Further, all of the listed drugs have the same punishment. This is legally significant. Ariaga-Pinon's concurrence noted that when a statute does not attach particular punishments to potentially distinct crimes in a statute, the offense is divisible from, quote, the plain language of the statute alone, end quote. Nevada's jury instructions are different from that of California's that were at issue in Coronado. There, California's jury instructions read, quote, insert controlled substance, end quote, which identifies the specific substance to be an essential element of the offense. By contrast, as explained, Nevada does not direct the jury to find or agree on the drug, so long as it is one of the drugs listed on the same schedules. We do not go to step 3 because when a statute is indivisible under DECAM, our inquiry ends. When was the board decision in this case? The board decision was in December of 2013, and it was DECAM before Ariaga-Pinon. It was before that. It came out several months before. On the third point, turning to the aggravated felony, the BIA properly found that the larceny offense is a divisible statute. Of note, Section 1A, the only part of the statute that matches the generic definition, is not identified by any of the Shepard documents. In fact, when the IJ looked at these documents, he pointed out that the record was inconclusive, and the DHS attorney then withdrew the charge. The only reason why the BIA says that it is not is because the allegations in the complaint describe what could be a generic larceny offense. Mathis explains that you cannot re-purpose a modified categorical approach to discover whether a defendant's prior conviction rested on facts that could also have satisfied the elements of a generic offense. While Kreef says that a conviction will qualify as an aggravated felony, only one state defense necessarily establishes that it matches the generic offense. When facing then a divisible statute and an aggravated felony, Kreef creates the presumption that Mr. Villavicencio's conviction rested upon nothing more than the Least of the Acts criminalized. The government had a chance to rebut this presumption, and it did not. On the fourth point, the BIA, improperly relying on Young, found that Mr. Villavicencio had the burden to disprove that his offense was an aggravated felony. While Kreef's Least of the Acts presumption overholds Young, which is the legal and right result. With this rule, Mathis prevents the DHS from obtaining and producing the document, which is a practical matter government attorneys are better situated to do, especially when compared to a pro se, detained non-citizen like Mr. Villavicencio. Mr. Villavicencio's record illustrates just how easy it is for the government to manipulate the DHS, which had initially produced all documents to support its charge to portability ground relating to the aggravated felony. Once the IJ pointed out that the DHS could not meet its burden, the DHS then withdrew the charge. Under Young, it is unfair that they then get the benefit of this ambiguity at the later cancellation stage. As recognized by the First Circuit in Sauceda, and Judge Watford's Almanza Arenas concurrence, on Kreef's Least of the Acts presumption is irreconcilable with Young. Under Miller v. Gammey, this conflict is enough for this court to reach and correct the issue. And if this court does not overturn Young, there will then be a circuit split. If there are no further questions, I wish to reserve the remainder of my time for rebuttal. Thank you. May it please the Court, good morning. My name is Dawn Conrad, and I'm here today on behalf of a respondent, United States Attorney General. Petitioner did not exhaust arguments regarding Nevada's conspiracy statute, Nevada Revised Statute 199.480, that he raises for the first time before this court. Although he proceeded pro se before the agency, he filed a brief with legal citations to the board that the board was raised therein. Neither immigration judge nor the board addressed the conspiracy element of his conviction. This case is actually analogous to this court's decision in Alvarado v. Holder, where this court declined to consider the non-citizen's arguments regarding Arizona's definition of contempt. That it failed to meet the generic definition of contempt, and thus failed to be a removable cold substance offense, because he failed to exhaust that argument before the board. The non-citizen in that case was charged with contempt of possession of a dangerous drug. Given liberally construing his claims, this court found that he did not raise a general argument about contempt, just like Petitioner in this case did not raise a general argument about conspiracy. He did not give the board an opportunity to pass on any of the arguments he now raises regarding Nevada's conspiracy statute. Counsel? Yes. If given a great disregard of a conspiracy statute, what about the statute regarding the drug, the drug violation? Yes, Your Honor. Well, that's certainly- The law is failed? Yes, that presents a more difficult question, and that's why we previously sought remand in this case. There's a lot of issues with Nevada Revised Statute 454, Section 351. One is it even a law relating to a controlled substance, because instead of referencing the Controlled Substance Act, it references the FDCA, which defines drug much more broadly as an article intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease. And therefore, we wanted the board to consider that in the first instance, whether it relates to a controlled substance. Is the statute invisible, in your view? That's another good question, Your Honor. Unfortunately, there's no clear guidance on this. I was unable to find a single Nevada case discussing this statute, nor any Nevada jury instructions. The jury instructions that Petitioner references regard conspiracy, not the drug statute at issue here, and also their reliance on whether in conspiracy you don't have to show the principle of criminal liability. I think that deals with whether the person was charged with an accessory or principle, not that you don't have to show what their conspiracy to commit a certain crime. So, it may be divisible, and it may not. There we have an overbroad statute, because obviously the FDCA regulates more drugs than the Controlled Substance Act. And whether that's a divisible element is unclear. The final guidance under- If it's not divisible, then you seem to be saying that applying the modified categorical approach was erroneous. That's correct. If it's not divisible, we don't get to that. Under Mathis, we have a little bit of guidance. Of course, Mathis suggested the court first looks to case decisions and then jury instructions. Since we don't have that here, Mathis court held the court can take a peek at the record documents to see how the defendant was charged. And if you take a peek at the record documents, in this case, you see that they did have to allege a specific substance, which they did allege was methamphetamine. So, that could suggest that was an element that has to be proven. Again, the question whether it's divisible is something that's unclear. So, that's another- I don't think we have a remand. Yes. Yes, Your Honor. And finally, if this court does not find- Finally, if this court finds that either the petitioner is not removable as charged or remands on the removability charge, this court does not need to reach the issue because if petitioner is not removable or until his removability is determined, his LPR status is restored and this court should not address his eligibility for cancellation or removal. Petitioner asks this court to review petitioner's potential inadmissibility due to his grand larceny conviction, which is an issue that is not ripe for review. Petitioner has been unless he meets one of the exceptions listed in AUSD section 11013. And until that situation arises, if he was deemed to meet one of those situations, he would be placed in 240 proceedings if it challenges admissibility before the immigration court, before the board, and eventually this court. This court only has jurisdiction to review final orders for removability and should not apply this again if he's been deported. Correct. If he eventually is successful either on his challenge here or on remand, he can apply for readmission. Well, he would only have to apply- I can't hear you. Well, his LPR status would be restored. So, he would only have to seek readmission if he meets one of the exceptions listed in AUSD section 11013. So, if he meets one of those, then he could, and subsequently someone rules either entry or, yeah, what he seeks to enter if they deem him inadmissible, he would be placed in 240 proceedings. So, he would have the If he's within the exceptions, he can't come back here? Correct, correct. And I also- If they don't try to impose those conditions, if those exceptions, he comes in as a lawful permanent resident? That's correct, that's correct. So, would you like me to discuss the alternative argument? I have a question, counsel. Why aren't we as well equipped to decide in the visibility of Nevada statutes as the BIA would be? Because the BIA has not had anything before that we don't have. That's correct, your honor, and certainly this court has called in the past that it can interpret state statutes in the first instance. We believe it needs to be for the board to also determine whether there is an element relating to a controlled substance. That the board does have the ability under the IAA to determine if such a conviction under the FDCA relates to a controlled substance in that language. Was that the overbreadth argument? Is that the It sort of all goes into one, well there's two issues here. One, is the statute divisible? And second, is there an element relating to a controlled substance offense? So, we would argue that the board gets to determine whether there is even an element related to a controlled substance offense. And it could also look at whether the statute was divisible, but also the court could My question was, is the question of whether it relates to a controlled substance offense a question of whether it's overbroad? Yes, yes. And we can't determine that or we shouldn't? We argue that you shouldn't, that the board should have the opportunity in the first instance because there are multiple issues involved here regarding what the FDCA regulates and whether it relating to a controlled substance. And I think you indicated before that there were other cases before the board that raised this, that this is a problem, a recurrent problem before the board maybe I misunderstood. Yeah, yeah. If the court has no further questions, we respectfully ask the board to close the hearing. Good morning, Your Honors. Erin Kesterje from Boston College Law School. I have three points. First, on the topic of remands to discuss relating to, we feel that remand is not proper. In Cruz-Martinez, this court remanded to the BIA to address the question of whether it's related in the context of NRS 454.351. And the BIA expressly declined to reach it. At that time, remand was appropriate because there was ambiguity. But two months later, the Supreme Court in Malooey expressly defined related to, which means that the, quote, elements that make up a state crime of conviction relate to a federally controlled substance. And, quote, there is nothing for the BIA to add to this legal reasoning. The absence of an existing legal definition that compelled Cruz-Martinez to remand is no longer possible. Second, Double Louis says that it's not a criminal crime to be interested in. You don't have to prove that it was a controlled substance. Is that essentially correct? Yes, Your Honor. In Malooey, the non-citizen was arrested with Adderall. The actual elements of his defense did not identify the substance. His conviction then did not relate to a federally controlled substance. On the second point, this court has stated, okay, the government says we can take a peek if it's, and look at this and say this was a controlled substance. What's wrong with that? Your Honor, only the charging document identifies methamphetamine as a controlled substance in this offense. But we, as argued before, we do not meet step three because this statute is overbroad indivisible. And in Lopez Valencia, this court decided that an overbroad, indivisible statute can never serve as a critical defense. We can't go to the modified, we'd be effectively going to the modified category although that's not appropriate. Yes, Your Honor, that is correct. Counsel? Yes, Your Honor. What, what, uh, do you base your argument that the statute is indivisible? Your Honor, predominantly on the divided jury instructions, do not identify, do not direct jury to find or agree on the drug as long as it is one of the drugs on state schedules. So, the absence of the jury identifying a specific substance renders it indivisible. Thank you. On my second point, um, this court has the authority to reach the aggravated felony. One year ago, in an area dealt with here as B Lynch, this court faced an identical situation. The non-citizen was outside the country. The court could have resolved the case just on the border. There, the court reached both grounds, even when the deportability grounds could have ended in termination. This panel may do the same. This is particularly significant because Vera Valentino was only charged with the deportability grounds and the aggravated felony only presented potential inadmissibility problems. On page 24 of our opening brief, we identified two inadmissibility grounds that ICE could charge him with at the border. One is reason to believe engaging in criminal conduct, and the other is removable after conviction of aggravated felony. He will get a hearing, but if ICE determines that he could be a future criminal, the reasoning behind that discretionary decision is not reviewable. Finally, your honors, we are asking this court for a decision on both the deportability grounds and the felony finding. This court has the authority to reach this, and if we win on the deportability grounds, we urge the court to reach the aggravated felony. Mr. Villavicencio has been in this country since he was two years old. When he was 12, he received the green card, and he is now 40. He has been deported to Mexico. He is currently there. He has extensive ties to the United States. His grandparents are naturalized citizens. His parents are green card holders. He has four U.S. children, the oldest of whom is 15, and the youngest is 9. There is no reason to keep him away any longer. If there are no further questions, I respectfully wish to submit the case. Any further questions? No? No, there are going to be any. Thank you. Thank you for the arguments presented, and once again, we want to thank the Boston College Program for participating in the call for a pro bono program. We have the case to start, and it is submitted.
judges: Schroeder, Rawlinson, Stafford